Christopher R. Houk, State Bar No. 20843
**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3
Tempe, AZ 85282
Telephone: 480.569.2377
Facsimile:  480.569.2379
chouk@houklawfirm.com

*Attorneys for Amethyst Deasy*

**IN THE UNITED STATES DISTRICT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Amethyst Deasy, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Northern Arizona Healthcare Corporation, | **AND DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Amethyst Deasy, by and through Christopher R. Houk, her undersigned attorney of record, submits this Complaint for relief against the Defendant Northern Arizona Healthcare Corporation (NAH) and Jury Trial Demand pursuant to Federal Rules of Civil Procedure 3, 7(a)(1), 8(a), and 38(a), (b). NAH subjected Amethyst to sex discrimination and retaliation.

**Plaintiff's Claims**

1. 42 U.S.C. § 2000e-2(a)(1) – NAH discriminated against Amethyst based on sex in violation of Title VII of the Civil Rights Act, including by creating a hostile working environment, subjecting her to adverse employment actions, and constructively discharging her employment.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ
85282 Telephone: 480.569.2377 - Fax: 480.569.2379

2.      42 U.S.C. § 2000e-3(a) – NAH retaliated against Amethyst when she complained about sex discrimination, including by creating a hostile working environment, subjecting her to adverse employment actions, and constructively discharging her employment.

**The Parties, Jurisdiction, and Claims**

3.      The Plaintiff Amethyst is, and has been at all times material to this Complaint,

    A.      an adult resident of Coconino County, Arizona; and

    B.      was an employee of Defendant Company NAH as defined by 42 U.S.C. § 2000e-(f).

4.      Defendant NAH is, and has been at all times material to this Complaint,

    A.      the employer of Amethyst as defined by 42 U.S.C. § 2000e-(b);

    B.      an employer of more than fifteen persons; and

    C.      located within Arizona, including Coconino County, Arizona.

5.      Amethyst seeks relief for counts one and two, which arise from federal statutes. This Court therefore has original jurisdiction pursuant to 28 U.S.C. § 1343(a)(3), (4).

6.      All the alleged events occurred in Coconino County, Arizona, which is also the domicile of the defendant.

7.      Based upon the foregoing, the United States District Court for the District of Arizona, Prescott Division, is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b) and LRCiv. 77.1(a).

8.      All conditions precedent to filing a lawsuit have been met.

**Amethyst Filed Her EEOC Charge**

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282 Telephone: 480.569.2377  -  Fax:  480.569.2379

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ
85282 Telephone: 480.569.2377  -  Fax:  480.569.2379

9.     In May 2019, Amethyst first submitted an inquiry to the Equal Employment Opportunity Commission (EEOC) against NAH. On May 14, 2019, Amethyst received confirmation from the EEOC that her inquiry was accepted and that she could schedule an interview. Amethyst followed the directions from the EEOC to schedule an online interview, but no interviews were available online. Amethyst called the EEOC and was told that only claims set to expire within 30 days at that time were being given interviews due to the EEOC's backlog. She contacted Congressman Tom O'Halleran's office to try to have the EEOC set an interview. On May 23, 2019, Congressman O'Halleran's office contacted the EEOC stating that she was unable to obtain an interview with the EEOC.

10.    On January 27, 2020—eight months after she was told she couldn't schedule an interview to file her Charge—the EEOC reached out to her about her inquiry. They told her she had until February 9, 2020, to submit a timely EEOC Charge. On February 5, 2020—before the deadline—Amethyst emailed the EEOC Charge to the EEOC. On February 10, 2020, the EEOC told her that the February 5, 2020, Charge, while unperfected, would be deemed filed as of February 5, 2020, provided she ultimately signed a final charge of discrimination, which she did on February 18, 2020.

11.    In March 2020, the EEOC interviewed Amethyst on her Charge.

12.    On April 18, 2020, nearly a year after she first reached out to the EEOC, Amethyst's EEOC Charge No. 540-2019-03072 was filed with the EEOC. Amethyst was not represented by an attorney at this time.

13.    On January 11, 2022, the EEOC issued a right to sue letter.

**<u>Demand for Jury Trial</u>**

14.     Plaintiff Amethyst demands a trial by jury pursuant to the Seventh Amendment to the United States Constitution, and Federal Rule of Procedure 38(a), (b).

## **Fact Allegations in Support of all Counts**

### *NAH Quickly Promoted Amethyst to Charge Nurse and Entrusted Her with Instructing Medical Professionals.*

15.     Amethyst earned a bachelor's degree from the University of San Francisco in nursing and worked as a home health nurse in pediatrics in California upon graduation. At University of California Davis Medical Center in Sacramento, she also volunteered with a burn unit.

16.     Amethyst first began working at NAH at an adult ICU in Cottonwood, Arizona. In 2013, she applied for and was offered a position as a nurse in the pediatrics department at Flagstaff Medical Center. She quickly rose in the ranks in the pediatrics department, serving as Charge Nurse and obtaining a raise. Amethyst also performed lifesaving treatment during the Covid-19 pandemic.

17.     At NAH, Amethyst instructed doctors, other nurses, EMTs, Respiratory therapists, paramedics, and anesthesia technicians on various topics, including Pediatric Advanced Life Support, Advanced Cardiac Life Support, and Association of Trauma Care Nurses.

### *For Years, NAH Subjected Amethyst to Sex Harassment and Disparate Treatment.*

18.     NAH allowed a male employee to harass Amethyst without any significant reprimand. His harassment of Amethyst continued from Spring 2017 to July 2019.

Page 4 of 26

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ
85282 Telephone: 480.569.2377 - Fax: 480.569.2379

19.    Male Employee routinely made sexist comments directly to Amethyst, for example,

    A.    In Spring 2017, Male Employee asked Amethyst to draw his penis in a room full of coworkers and trainees. Amethyst complained about this to her direct manager, Pediatric and PICU Manager ("Pediatric Manager").

    B.    In Spring and Summer 2018, Male Employee often made comments to Amethyst about his sexual relationship (including referring to "hot sex") with Amethyst's friend. Amethyst opposed Male Employee's comments, chastising him about the inappropriateness of his comments several times, but the harassment continued.

    C.    Throughout their entire time working together until Amethyst transferred in July 2019, Male Employee called Amethyst "AmWay Global", insinuating she is overweight. This derogatory nickname began years prior when Amethyst was pregnant. Male Employee refused to stop calling her this name despite repeated protests from her and colleagues. Amethyst complained to her manager multiple times about the nickname but was ignored.

20.    In August 2017, Male Employee was serving as a relief charge nurse on a particular day. He refused to treat his own patient--a violent male teenager with documented use of aggression--and demanded that Amethyst treat the patient, claiming that he feared for his own safety. Notably, Amethyst was almost six months pregnant at that time.

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ

85282 Telephone: 480.569.2377 -  Fax:   480.569.2379

21.     Throughout Summer 2017 to July 2019, Male Employee routinely harassed Amethyst and subjected her to adverse employment actions because of her sex. For example,

A.     Male Employee undermined Amethyst's duties as Charge Nurse because of her sex or in retaliation for her complaints about him. (As a Charge Nurse, Amethyst managed the workflow of the unit on her shifts.) For example, Male Employee told other coworkers not to listen to Amethyst, claiming that Amethyst did not know how to perform her job duties.

B.     Male Employee frequently stood over Amethyst's shoulder and criticized her work.

C.     Male Employee routinely became angry when Amethyst assigned him to be a float nurse and openly said in front of patients and staff that being a float nurse was below him or that he was too good of a nurse to be floated to other departments to fill staffing needs. On one occasion, Male Employee became extremely angry that he was assigned to the unit as a float nurse when Amethyst was Charge Nurse. He became so angry that he threw his food on the counter at the nurses' station, began yelling and cursing about how he should not be a float nurse because he was better than that, and stormed out of the unit.

D.     Male Employee was tasked with ordering supplies for the pediatric department, but he would not maintain lifesaving supplies until management, Amethyst, or other coworkers asked him to. On several occasions, when Amethyst was working a busy shift and the emergency

Page 6 of 26

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ

85282 Telephone: 480.569.2377 - Fax: 480.569.2379

room had critically ill children, Amethyst and other nurses were short on critical, lifesaving supplies because Male Employee had not ordered them. When Amethyst approached Male Employee about the supply shortage, he made excuses and scoffed at Amethyst, again undermining her authority. Often, Amethyst had to ask him to order supplies multiple times before he finally did so, which impeded patient care.

22.     Male Employee did not treat men in these ways.

23.     NAH management failed to stop Male Employee's colleagues from undermining her authority and interfering with her ability to manage Male Employee. For example, frequently when Amethyst needed to talk to Male Employee about his unprofessional behavior, other coworkers would accuse her of being too hard on him. Also, a nurse put her finger angrily in Amethyst's face and demanded that Amethyst "ease up on Male Employee."

24.     On the other hand, other female nurses confided in Amethyst that they too were harassed by Male Employee's inappropriate and unprofessional behavior.

25.     Male Employee acted inappropriately with patients, too. For example,

A.     Male Employee told young, female patients that he loved them, which violated standards of care.

B.     Male Employee made derogatory comments about patients based on disability, race, and socio-economic status. A few times per month, Male Employee made negative comments about disabled, poor, or minority patients, that their lives were not worth it and that they were not worth

Page 7 of 26

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ
85282 Telephone: 480.569.2377 - Fax: 480.569.2379

his time. Male Employee said these things in front of the team but was never reprimanded.

### *NAH Failed to Stop Male Employee's Years of Harassment Toward Amethyst and Others.*

26.     NAH was aware of Male Employee's behavioral issues for years. Between November 2014 and August 2015, Amethyst's supervisor Pediatric Manager met with Male Employee multiple times about his contentious relationships with his coworkers. Each time, Male Employee made false promises to change. For example,

A.     In November 2015, Male Employee admitted that others on the team perceived him to be negative and that he had angry or anxious outbursts. He admitted that he got angry at his coworkers. Instead of reprimanding Male Employee for his self-admitted outbursts, Pediatric Manager encouraged Male Employee to, "Keep journaling to discover the root cause of your anger".

B.     Two weeks later, when there were additional issues with Male Employee, Pediatric Manager gave Male Employee's poor behavior a pass because he said he was speaking with coworkers to mend his relationships with them. But, over the next several years, Male Employee continued his behavior.

C.     Several months later, in January 2016, Pediatric Manager again met with Male Employee who admitted his social life at work was not going well but gave him another pass because the Pediatric Manager took him at his word when he said he was doing well at work.

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282 Telephone: 480.569.2377 - Fax: 480.569.2379

27. Several coworkers complained about Male Employee hiding in the bathroom during intense, critical situations with patients.

28. From November 2014 and August 2015, NAH did not reprimand Male Employee for his behavioral issues but was merely gave him pep talks that never amounted to any real change.

### In 2018 and 2019, Amethyst Complained to NAH About Sex Discrimination Several Times, but NAH Failed to Stop the Harassment.

29. In August 2017, Amethyst first complained to Pediatric Manager about the sex discrimination and harassment.  Specifically, Amethyst complained about Male Employee's comment about his penis. At first, Pediatric Manager did nothing to address Amethyst's complaints.

30. It was not until months later, on October 30, 2017, that Pediatric Manager first spoke to Male Employee about asking Amethyst to draw his penis. But Pediatric Manager only gave Male Employee a warning—despite knowing this type of behavior had been his modus operandi for years.

31. In its subsequent communications with Amethyst, NAH claimed this counseling was enough to alleviate the issue.

32. Around that time, NAH claimed that it investigated Male Employee's harassment of other nurses, but

    A. it only interviewed four nurses who were all personal friends of Male Employee and Pediatric Manager, and

Page 9 of 26

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282 Telephone: 480.569.2377 - Fax: 480.569.2379

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ
85282 Telephone: 480.569.2377 - Fax: 480.569.2379

B.      it did not interview any of the other nurses on the floor during many of the incidents of harassment, many of whom complained about Male Employee themselves.

33.     As a result of NAH's failures, Male Employee's harassing behavior continued. For example, multiple colleagues reported to Pediatric Manager that in April 2018, Male Employee had thrown a burrito and notebook at a female nurse's desk, threatening to abandon his patients. Pediatric Manager did not reprimand Male Employee for this. Instead, she asked him if he deserved to be reprimanded, apologized for her lack of support, and gave Male Employee yet another chance. Pediatric Manager rewarded Male Employee's tantrum by letting him switch positions that day with the charge nurse.

34.     Male Employee blamed multiple nurses for riling him up.

35.     About two weeks after her complaint to management, Male Employee approached Amethyst at work and told her that Pediatric Manager had told him Amethyst complained about him. Male Employee spoke sarcastically to Amethyst about her complaint against him, saying he won't date any of her friends in the future. He took no responsibility for his actions nor acknowledged that he did anything wrong.

36.     Because NAH failed to stop Male Employee's harassment, Amethyst complained again in early 2018.

37.     In September 2018, Male Employee received a performance evaluation that stated: "Be self-aware of perceived inappropriate comments you make toward colleagues and gossiping." But this performance evaluation did not stop Male Employee's harassment of Amethyst.

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ
85282 Telephone: 480.569.2377 - Fax: 480.569.2379

### NAH Retaliated Against Amethyst After She Complained About Sex Discrimination by Subjecting Her to Harassment.

38.     Shortly after one of Amethyst's complaints about Male Employee in 2018, Pediatric Manager reacted negatively to Amethyst's complaints about Male Employee's discrimination and harassment by demanding, multiple times, that Amethyst stop *all* complaints against Male Employee even when they were about harassment. Pediatric Manager accused Amethyst of complaining too much about Male Employee. Male Employee's harassment of Amethyst continued.

### HR Representative Emailed Amethyst in October 2018, Telling Her the Complaints Were Addressed.

39.     Blaming the victim, Pediatric Manager and Director of PICU told Amethyst multiple times that she needed to be more assertive in managing employees, particularly Male Employee. In fact, Pediatric Manager told Amethyst that she must manage his behavior herself because he "is emotionally immature" and she was "responsible for raising him as she would her own children."

40.     Pediatric Manager told her that she needed to follow the chain of command, starting with directly telling Male Employee about problems she had with him. Amethyst responded that when she does manage him, she's criticized for being too hard on Male Employee. Pediatric Manager ignored her concerns.

41.     Pediatric Manager and Director of PICU wrongly believed Amethyst had no further issues with Male Employee when Amethyst stated she had no problems with him during a particular week, selectively ignoring that generally he was not good to work with.

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ
85282 Telephone: 480.569.2377 - Fax: 480.569.2379

42.     Before Amethyst began complaining about Male Employee in early 2017, she had positive performance reviews. But, after Amethyst began complaining, Pediatric Manager retaliated against her by claiming she had performance issues, in the following ways:

> A. Pediatric Manager criticized Amethyst for missing a meeting even though she missed it due to family reasons.

> B. Though Pediatric Manager approved Amethyst's hours, multiple times, Pediatric Manager reprimanded Amethyst for picking up extra shifts and working overtime hours, while not reprimanding Male Employee for doing the same. Even after the situation was resolved, Pediatric Manager frequently brought up this issue again.

43.     On January 28, 2019, NAH promoted Male Employee to a Charge Nurse—despite his documented record of behavioral issues.

44.     On February 5, 2019, Amethyst filed an anonymous report against Male Employee on the Global Compliance (GC) Alertline System. Amethyst submitted this complaint at the direction of Director of Behavioral Health because NAH did act properly to address the original harassment and because Male Employee's harassment continued.

45.     Thus, in her anonymous complaint, Amethyst explained Male Employee's continuing harassment against her as well as the penis comment that was never properly addressed.

46.     Just several days later, Pediatric Manager and Director of PICU instructed Amethyst that she must stop *all further* complaints about Male Employee.

47.     NAH claimed to investigate Amethyst's anonymous complaint. However, NAH merely interviewed Male Employee.

48.     One week after Amethyst's anonymous complaint, Pediatric Manager intensified her retaliation against Amethyst. On February 13, 2019, Pediatric Manager and Director of PICU called Amethyst into a meeting for a "coaching session", blaming her and telling her she had to fix her interactions with Male Employee.

49.     Pediatric Manager and Director of PICU pulled Amethyst into frequent meetings to repeatedly tell her to fix her interactions with Male Employee. Most of the meetings were after Amethyst had just worked a 12-hour shift or were on her days off.

50.     Pediatric Manager and Director of PICU continued retaliating against Amethyst. They told Amethyst that her colleagues were complaining about her picking up extra shifts. Pediatric Manager and Director of PICU did not disclose who the colleagues were, and nobody had ever previously approached Amethyst about the issue. Pediatric Manager admitted that there was technically nothing wrong with Amethyst picking up shifts. In fact, Pediatric Manager knew that Amethyst's coworkers often *asked* Amethyst to cover their shifts and were grateful to Amethyst for doing so.

51.     Then, another week later, on February 20, 2019, Pediatric Manager

    A.     told Amethyst she must stop criticizing Male Employee completely (no matter the topic),

    B.     told her she must stop speaking negatively about Male Employee to anyone,

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ
85282 Telephone: 480.569.2377 - Fax: 480.569.2379

C.      told her if she has a problem with anyone, she must communicate with Pediatric Manager better,

D.      told her must remain professional, and

E.      told Amethyst she must not tell anyone on the team about the complaints she was making about Male Employee.

F.      in the same meeting, Pediatric Manager accused Amethyst of leaving handwritten notes about colleagues' conduct, even though someone else did it. This referred to an incident earlier in the month. Day Charge Nurse asked Amethyst to document other nurses' work to facilitate coaching. Several night shift nurses had complained to Amethyst that the day shift nurses had not completed or were missing care documentation. So, Amethyst took performance notes about the nurses, none of which were derogatory and were merely factual for Day Charge Nurse's knowledge. Amethyst put the handwritten notes immediately into her pocket and kept them overnight. Nobody saw the notes when they were in Amethyst's possession. As she was about to shred the notes after having presented her findings to Day Charge Nurse, Day Charge Nurse asked Amethyst to give her the notes, so Amethyst turned them over to Day Charge Nurse. That day, Day Charge Nurse left the notes out in the open for the team to see.

52.     Further in February 2019, Pediatric Manager and Director of PICU accused Amethyst of "manipulating" the schedule, ignoring that the time-tracking system was confusing

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282 Telephone: 480.569.2377 - Fax: 480.569.2379

to her, and other nurses and that Amethyst had requested training on tracking and scheduling several times. The two managers forced Amethyst to receive training on the tracking and scheduling without pay. Amethyst did so well that she soon began training coworkers and even the scheduler on how to use the system.

53. Pediatric Manager demanded a meeting with Amethyst to talk about the handwritten notes multiple more times—on February 13, February 20, March 15, and April 1— each time blaming Amethyst and ignoring Amethyst's explanation that it wasn't her fault. Even though Pediatric Manager ultimately acknowledged that Day Charge Nurse may have left the notes out, she still blamed Amethyst.

54. In March 2019, Amethyst noticed Pediatric Manager left her off the schedule for that day resulting in her being short on her regular hours for that pay period as a result.

55. Also in March 2019, Pediatric Manager started demanding that she pre-approve Amethyst's overtime hours every week. But, NAH did not restrict Male Employee in the same way. When Amethyst complained this was discriminatory, Pediatric Manager falsely claimed that Amethyst was held to this higher standard because she was working too many overtime hours. But Pediatric Manager herself had approved these hours. For example, on March 2, 2019, Pediatric Manager had accused Amethyst of working 21 hours of overtime without approval, but Pediatric Manager had previously approved these hours and had allowed Male Employee to work similar overtime hours in that period without reprimand.

56. On March 9, 2019, Pediatric Manager then gave Amethyst a negative, unjustified evaluation based on false, unjustified accusations:

A. Pediatric Manager wrote that Amethyst had "room for improvement."

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282 Telephone: 480.569.2377 - Fax: 480.569.2379

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ
85282 Telephone: 480.569.2377 - Fax: 480.569.2379

B.      Pediatric Manager brought up an incident against Amethyst, which was the first time Amethyst had heard about it. The incident in question was from months before when Amethyst cried on her break due to a deeply personal family emergency. Her colleagues were concerned about her, but Pediatric Manager used this incident as an excuse to demand Amethyst be more professional. NAH previously trained Amethyst that a first-time incident like this is not to be included in evaluations.

57.      On March 15, 2019, Pediatric Manager told HR that Amethyst was complaining about Male Employee too much and expressed an untrue accusation against Amethyst that her reputation was declining for the purpose of creating a paper trail against Amethyst.

58.      On the same day, HR also asked to speak to Amethyst. During the meeting, Amethyst

A.      explained that she felt retaliated against for making the complaint against Male Employee and that she felt unsafe at work.

B.      said that instead of doing anything to address her complaints properly, Pediatric Manager was constantly pulling Amethyst into meetings to tell her she cannot complain about Male Employee.

C.      told HR that despite all her complaints, Male Employee was still inappropriate and unprofessional with her.

59.      But HR allowed Pediatric Manager to bully Amethyst during this meeting and—again—accused her of complaining about Male Employee too much. Pediatric Manager (along with Director of PICU) responded to Amethyst's concerns that the harassment was still

happening by telling her "these are all things from Male Employee's past." HR did not reprimand Pediatric Manager or Male Employee in any way nor address Amethyst's concerns in any fruitful way.

60.    Having come to her wit's end, Amethyst emailed HR Representatives on March 19, 2019, asking for a follow-up to her email complaining about Male Employee and asking for assistance. She informed them that the issues with Male Employee were still not resolved after nearly two years of complaining. She received no response.

61.    HR informed Amethyst on April 1, 2019, that her February corporate complaint was closed following a meeting with Pediatric Manager.

62.    The following day, Amethyst expressed concern to HR Representative that her complaint was closed without any genuine action. NAH employee told Amethyst to "get over it and move on."

63.    In April 2019, NAH denied Amethyst an opportunity for training on the vascular access team. While she was allowed to train with that department, she was told she could not be paid for the hours spent on training. NAH gave Male Employee the same training with pay.

64.    On April 8, 2019, HR issued its Findings & Recommendations Report about the corporate complaint and found Amethyst's complaints about retaliation and on-going sexual harassment were "Unsubstantiated." NAH claimed Amethyst accepted the findings, but that was false.

65.    Around April 28, 2019, again NAH allowed Male Employee to work excessive overtime hours while NAH denied Amethyst the same opportunity. This continued into May 2019 and lasted until July 2019 when Amethyst transferred out of the department.

Page 17 of 26

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ
85282 Telephone: 480.569.2377 -  Fax:  480.569.2379

66.     On May 20, 2019, Pediatric Manager issued Amethyst a *second* unjustified, negative performance review regarding some of the *same* incidents alleged previously. Pediatric Manager accused her of:

A.      Being late to a meeting without calling to say she'd be late, ignoring that Amethyst was late because she was assisting other staff during an emergency procedure and didn't have the phone Charge Nurses shared. Pediatric Manager was aware that Amethyst and her coworkers were assisting the patient.

B.      Again—leaving the handwritten notes out in front of coworkers, once again ignoring that Amethyst was blameless.

C.      Again—complaining about Male Employee's behavior too much, even though management repeatedly ignored her complaints and allowed him to continue harassing her without reprimand.

D.      Again—working too many hours despite her being given approval, other staff having scheduling and time tracking issues, and allowing Male Employee to work as much as he wanted.

67.     In June 2019, Male Employee was again allowed to get the additional training in other departments, which provided him precious opportunity for overtime related to the varied skills. In contrast, Amethyst was forced to get the same training unpaid.

68.     Male Employee was allowed these special privileges even though Amethyst had outperformed him. For example, before she began complaining about the harassment,

Amethyst had worked the most crisis shifts. This was considered a prestigious duty and earned her an excellent rating on her annual review that year for going above and beyond for the unit.

69.    By July 2019, Amethyst gave notice that she was going to transfer into another department. Just a few days later, she was called into another meeting where the PICU Director and the Pediatric Manager once again accused her of complaining too much about the Male Employee, blamed her for Male Employee's harassment against her, and engaged in other intimidating actions such as asking a high-ranking HR Representative to sit in on the meeting instead of the usual HR Representative.

70.    On July 29, 2019, Amethyst transferred away from the PICU as a Charge Nurse and into a role as a regular RN in the OR department. This was considered a demotion due to a loss in wages, the loss of Charge Nurse duties, and diminished prestige.

71.    In September 2019, Pediatric Manager gave Amethyst yet another negative performance review.  In the review, Pediatric Manager rated her "meet expectations" in all categories except for communication, where she was rated to consistently "not meet expectations". Pediatric Manager—once again—accused Amethyst of complaining too much.

72.    On March 26, 2020, Amethyst sent a letter to NAH from her doctor requesting an exemption from working night shifts due to illness. Amethyst had previously requested day shifts in 2018 due to the harassment she experienced from Male Employee and NAH's failure to help her for years, which had finally taken a toll on Amethyst.  However, at that time, she was still forced to work night shifts and was told by Pediatric Manager that it was because her colleagues would be jealous.  Her doctor determined that working nights was no longer advisable for her health.  NAH denied this request.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ
85282 Telephone: 480.569.2377 - Fax: 480.569.2379

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ

85282 Telephone: 480.569.2377 - Fax: 480.569.2379

73.     Instead of honoring her doctor's requests to refrain from working all-night shifts, Amethyst was forced to choose between not getting any hours or working in the ICU department to caring for Covid-19 patients. Amethyst opted to work in the ICU, on day shifts, with Covid patients. However, she was still required to work night shifts in the operating room when she was on call, despite her medical condition and was told that it was NAH's policy for operating room nurses.

74.     On May 11, 2020, Amethyst requested to be put on per diem shifts (instead of full time) starting on May 23, 2020, to continue helping her overworked and understaffed coworkers with Covid-19 patients during the pandemic, but NAH denied that request. To Amethyst's knowledge and previous experience, nurses were allowed to change to per diem status at any time.

75.     On May 13, 2020, HR responded to Amethyst telling her that she would have to resign because no per diem positions existed.

76.     On May 25, 2020, Amethyst was forced to resign because NAH had refused to accept her offer to work per diem shifts—shifts that would accommodate her doctor's orders not to work nights.  The continuing and escalating harassment and adverse employment actions and Amethyst's deteriorating health conditions forced her to resign.

77.     Since her constructive discharge from NAH, Amethyst regularly received mental health therapy for PTSD, anxiety, and other symptoms due to the harassment and discrimination she experienced at NAH.

*Amethyst Suffered Emotional Distress Due To The Harassment She Endured At NAH*

Page 20 of 26

78.     Amethyst experiences mental and physical anguish as the result of the harassment at NAH. She experiences suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, sorrow, fear, depressive and anxious feelings, exacerbation of PTSD and anxiety, loss of health, loss of sleep, nightmares, change in demeanor, loss of enjoyment of life, and loss of the love, care, affection, companionship, and other pleasures of the marital relationship.

**Relief Requested**

79.     Based upon the foregoing, Plaintiff Amethyst requests judgment and orders granting her the following relief against the Defendant:

**Count One:**
**Discrimination Based on Sex, Title VII**
**42 U.S.C. § 2000e-2(a)(1)**

80.     Amethyst repeats and re-alleges each allegation of this complaint as if fully set forth in this claim.

81.     Amethyst performed her job duties satisfactorily as evidenced by her upward progression in positions at NAH that lead her to become a Charge Nurse and being trusted with training, positive reviews, and positive feedback from her coworkers.

82.     NAH subjected Amethyst to adverse employment actions, discrimination, and harassment, including by: criticizing her for working too many approved hours and cutting her hours but allowing Male Employee to work as many hours as he wished without reprimand; allowing Male Employee to cause interpersonal problems on the team without reprimand, including undermining Amethyst's authority; allowing Male Employee to make derogatory, sexual comments to Amethyst without reprimand; blaming Amethyst for Male Employee's

Page 21 of 26

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282 Telephone: 480.569.2377 - Fax: 480.569.2379

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ
85282 Telephone: 480.569.2377 - Fax:  480.569.2379

behavior and prohibiting her from complaining about the sex harassment; calling her into meetings for previously resolved issues or issues that did not exist; and increasing scrutiny of her, including by issuing her several unjustified performance reviews.

83.     The working conditions became so intolerable that a reasonable person in Amethyst's shoes would have felt compelled to resign.

84.     The unlawful employment practices complained of in the foregoing were and are intentional.

85.     The unlawful employment practices complained of in the foregoing paragraphs were and are done with malice or with reckless indifference to Amethyst's federally protected rights.

86.     As a direct and proximate result of the conduct of NAH, Amethyst is entitled to compensatory damages, including for suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, sorrow, fear, depressive and anxious feelings, exacerbation of PTSD and anxiety, loss of health, loss of sleep, nightmares, change in demeanor, loss of enjoyment of life, and loss of the love, care, affection, companionship, and other pleasures of the marital relationship.  Amethyst is reasonably likely to incur more compensatory damages in the future.

87.     The unlawful employment practices complained of were intentional.

88.     The unlawful employment practices complained of were done with malice or with reckless indifference to Amethyst's federally protected rights.

89.     Amethyst seeks a judgment for the following:

A.     A declaration that NAH violated Amethyst's rights under Title VII;

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ
85282 Telephone: 480.569.2377 - Fax: 480.569.2379

B.     For injunctive relief, including a permanent injunction prohibiting NAH from engaging in discrimination under Title VII;

C.     Compensatory and general damages in an amount to be determined by the trier-of-fact and other relief to make whole Amethyst and affirmative relief necessary to eradicate the effects of NAH's unlawful practices;

D.     Punitive damages to punish and deter;

E.     Back pay computed from the date of the discriminatory act until the date of final judgment;

F.     Reinstatement, or front pay in lieu of reinstatement;

G.     Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule Civil Procedure 54(d)(2), and Local Rule Civil Procedure 54.2; and

H.     Her taxable costs incurred herein, pursuant to Federal Rule Civil Procedure 54(d)(1), Local Rule Civil Procedure 54.1, and 28 U.S.C. § 1920.

**Count Two:**
**Retaliation for Complaining About Sex Discrimination**
**42 U.S.C. § 2000e-3(a)**

90.     Amethyst repeats and re-alleges each allegation of this complaint as if fully set forth in this claim.

91.     Amethyst performed her job duties satisfactorily as evidenced by her upward progression in positions at NAH that lead her to become a Charge Nurse and being trusted with training, positive reviews, and positive feedback from her coworkers.

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ
85282 Telephone: 480.569.2377 - Fax: 480.569.2379

92.     NAH subjected Amethyst to adverse employment actions, discrimination, and harassment because she complained of discrimination, including by: issuing her negative performance evaluations, demanding that she stop complaining about sex harassment; making repeated false accusations against for leaving handwritten notes about coworkers that another nurse admitted to leaving out; accusing her of working too many (approved) hours and cutting her hours; and increasing scrutiny of her, including by issuing her several unjustified performance reviews.

93.     The working conditions became so intolerable that a reasonable person in Amethyst's shoes would have felt compelled to resign.

94.     The unlawful employment practices complained of in the foregoing were and are intentional.

95.     The unlawful employment practices complained of in the foregoing paragraphs were and are done with malice or with reckless indifference to the federally protected rights of Amethyst.

96.     As a direct and proximate result of the conduct of NAH, Amethyst is entitled to compensatory damages, including for suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, sorrow, fear, depressive and anxious feelings, exacerbation of PTSD and anxiety, loss of health, loss of sleep, nightmares, change in demeanor, loss of enjoyment of life, and loss of the love, care, affection, companionship, and other pleasures of the marital relationship.  Amethyst is reasonably likely to incur more compensatory damages in the future.

97.     The unlawful employment practices complained of were intentional.

98.     The unlawful employment practices complained of were done with malice or with reckless indifference to Amethyst's federally protected rights.

99.     Amethyst seeks a judgment for the following:

A.      For injunctive relief, including a permanent injunction prohibiting NAH from engaging in retaliation under Title VII and reinstatement to her previous position;

B.      A declaration that NAH violated Amethyst's rights under Title VII;

C.      Compensatory and general damages in an amount to be determined by the trier-of-fact and other relief to make whole Amethyst and affirmative relief necessary to eradicate the effects of NAH's unlawful practices;

D.      Punitive damages to punish and deter;

E.      Back pay computed from the date of the discriminatory act until the date of final judgment;

F.      Reinstatement, or front pay in lieu of reinstatement;

G.      Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule Civil Procedure 54(d)(2), and Local Rule Civil Procedure 54.2; and

H.      Her taxable costs incurred herein, pursuant to Federal Rule Civil Procedure 54(d)(1), Local Rule Civil Procedure 54.1, and 28 U.S.C. § 1920.

Respectfully submitted this 8th day of April 2022.

**THE HOUK LAW FIRM**

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282 Telephone: 480.569.2377 - Fax: 480.569.2379

By /s/ Christopher R. Houk
Christopher R. Houk
*Attorney for Plaintiff*

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282 Telephone: 480.569.2377 - Fax: 480.569.2379

Page 26 of 26